586 So.2d 1239 (1991)
STATE of Florida, Appellant,
v.
Karen Elizabeth OLSON, Appellee.
No. 89-1710.
District Court of Appeal of Florida, First District.
September 20, 1991.
*1240 Robert A. Butterworth, Atty. Gen. and James W. Rogers, Asst. Atty. Gen., for appellant.
Ausley, McMullen, McGehee, Carothers & Proctor and C. Gary Williams and Stephen C. Emmanuel, Robert Augustus Harper, Jr., Tallahassee, for appellee.
SCHWARTZ, ALAN R., Associate Judge.
The state appeals from a final order dismissing a prosecution for a violation of section 951.22 on the ground that the statute is unconstitutional both on its face and as applied to the defendant. We reverse.
*1241 The underlying facts of the case, as determined by the trial court after an evidentiary hearing, are appropriately set forth in the order under review:
On June 11, 1988, Olson was interviewing inmates at the Leon County Jail in connection with her duties as a reporter for the Tallahassee Democrat. She chose to conduct these interviews as a jail visitor rather than through the alternative procedure which the Leon County Sheriff's Department (LCSD) had established for members of the news media. While the Defendant was talking with one inmate, another inmate, Fred Madry, passed her some pieces of paper with writing on [them].[1] This was observed by a correctional officer who detained and questioned the Defendant about them. The defendant refused the officer's request to relinquish the papers. After further discussion, Olson was allowed by the correctional staff to leave the jail without surrendering the papers. Thereafter, she was arrested by the Leon County Sheriff's Department and charged with violation of F.S. § 951.22.
The information in question alleged that:
[I]n Leon County, Florida, the above named defendant(s), on the 11th day of June, 1988, did unlawfully, while upon the grounds of the Leon County Jail, a county detention facility, receive from an inmate and possess,[2] written communications, an article or thing declared to be contraband, contrary to Section 951.22, Florida Statutes.[3]
We are unable to agree with the trial judge's conclusions[4] that the portion of the *1242 statute invoked by the state against Ms. Olson is in any way invalid.
Our approach to this case begins with  and is largely determined by  the familiar rule which has, and has been given, particular application to the present situation: that a court may consider the validity only of that portion of a broader statute which concerns the conduct in question before it. As is said in 10 Fla.Jur.2d Constitutional Law section 62:
Not only must a person be adversely affected by a statute in order to challenge its constitutionality but he also must be affected by the portion of the statute which he attacks. Thus, a person cannot raise an objection to part of a statute unless his rights are in some way injuriously affected thereby... .
* * * * * *
One who is not himself denied some constitutional right or privilege may not be heard to raise constitutional questions on behalf of some other person who may at some future time be affected.
10 Fla.Jur.2d Constitutional Law § 62 at 285 (1979). E.g., Greenway v. State, 413 So.2d 23 (Fla. 1982) (defendant may challenge only that portion of § 944.47, state prison equivalent of 951.22, prohibiting possession of particular contraband involved); Wells v. State, 402 So.2d 402 (Fla. 1981) (same); see generally Henderson v. Antonacci, 62 So.2d 5 (Fla. 1952); State ex rel. Clarkson v. Philips, 70 Fla. 340, 70 So. 367 (1915). In this case, then, we confine our inquiry to the determination of whether Ms. Olson may constitutionally be prosecuted for receiving the note from Madry under the appropriate portion of 951.22; that is, the part which provides that

*1243 [i]t is unlawful except through regular channels as duly authorized by the sheriff or officer in charge .. . to ... receive from any inmate of any such facility wherever said inmate is located at the time... any of the following articles which are hereby declared to be contraband for the purposes of this act, to wit: Any written ... communication.[5]
§ 951.22, Fla. Stat. (1989). In our view the question virtually answers itself in the affirmative.
It is clear first of all that the state in its undoubted, virtually plenary authority to maintain order within its prisons may constitutionally forbid an unauthorized exchange of written communication between an inmate and an outsider. 60 Am.Jur.2d Penal and Correctional Institutions § 45 (1987); 72 C.J.S. Prisons § 96 (1987); 41 Fla.Jur.2d Prisons and Prisoners § 36 (1983); see Houchins v. KQED, Inc., 438 U.S. 1, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978); Saxbe v. Washington Post Co., 417 U.S. 843, 94 S.Ct. 2811, 41 L.Ed.2d 514 (1974); Pell v. Procunier, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); State v. Ashcraft, 378 So.2d 284 (Fla. 1979); State v. Oxx, 417 So.2d 287 (Fla. 5th DCA 1982). Thus, the validity as a matter of substantive due process of the "note passing" portion of the statute, with which we are solely concerned, cannot be doubted. See State v. Saiez, 489 So.2d 1125, 1129 (Fla. 1986). Nor do we find any merit to the other constitutional attacks mounted against this prosecution:

1. Statute Not Vague

We frankly find nothing at all in the appellee's contention that there is anything vague about the portion of 951.22 she allegedly violated. Certainly, no person "of common intelligence" needs to guess at the fact that, when the statute says that one may not receive any "written communication" "from any inmate" "except through regular channels as duly authorized by the sheriff,"[6] § 951.22(1), Fla. Stat. (1989), it means just that and that the conduct which forms the basis of this case is unambiguously described by that provision. Hence, the vagueness claim must fall. E.g., Sandstrom v. Leader, 370 So.2d 3, 5-6 (Fla. 1979); Swinney v. Untreiner, 272 So.2d 805 (Fla. 1973), cert. denied, 413 U.S. 921, 93 S.Ct. 3064, 37 L.Ed.2d 1043 (1973); Sexton, Inc. v. City of Vero Beach, 555 So.2d 444 (Fla. 4th DCA 1990).

2. First Amendment Objections Without Merit

The first amendment complaints arising from the defendant's status as a *1244 newspaper reporter allegedly gathering information likewise have no substance. It is first clear that the fact that a facially neutral statute like this one which is broadly applicable to forbid antisocial conduct when committed by any member of the public, is not rendered in any way invalid merely because it may, in a particular case, affect a member of the press. Shevin v. Sunbeam Television Corp., 351 So.2d 723 (Fla. 1977), appeal dismissed, 435 U.S. 920, 98 S.Ct. 1480, 55 L.Ed.2d 513 (1978); see Wilkerson v. State, 556 So.2d 453 (Fla. 1st DCA 1990), review denied, 564 So.2d 1088 (Fla. 1990).
Moreover, and finally, we disagree with the claim that the section either facially or by overbreadth forbids behavior which is protected by the first amendment to the United States Constitution and by Article I, §§ 4 and 9 of the Florida Constitution. See, e.g., Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); Trushin v. State, 425 So.2d 1126 (Fla. 1982). This is so, very simply, because the activity in question here, the receipt by a newspaper reporter of an unauthorized communication from a prison inmate, is simply not entitled to first amendment protection. Indeed, it is well settled that where, as is admittedly true here, there are other available means of contact, the press has no right of access whatever to a prisoner beyond that of the general public. Houchins, 438 U.S. at 9, 98 S.Ct. at 2593-94, 57 L.Ed.2d at 561; Saxbe, 417 U.S. at 850, 94 S.Ct. at 2815, 41 L.Ed.2d at 519; Pell, 417 U.S. at 834, 94 S.Ct. at 2810, 41 L.Ed.2d at 508. Under these authorities the press may constitutionally be precluded even from face to face access to prisoners. Saxbe, 417 U.S. at 850, 94 S.Ct. at 2815, 41 L.Ed.2d at 519. Surely, then, there can be no infirmity in prohibiting the unsupervised and unauthorized exchange of a written note. Since, therefore, the pertinent clauses of § 951.22 simply cannot be read to prohibit anything at all beyond the statute's "plainly legitimate sweep," Broadrick v. Oklahoma, 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830, 842 (1973), that is, the regulation of prison activity, Olson's first amendment arguments cannot be sustained. See Trushin, 425 So.2d at 1131, Wilkerson, 556 So.2d at 455, review denied, 564 So.2d 1088 (Fla. 1990).
For these reasons the judgment under review is reversed with directions to reinstate the information.
WOLF, J., concurs, participating after oral argument, in substitution for THOMPSON, Senior Judge.
BARFIELD, J., dissents, with opinion.
BARFIELD, Judge, dissenting.
I must disagree with the majority opinion for two reasons. The first and more prominent mistake which I believe the majority has made is the analysis of standing and facial constitutional validity by reference to the specific facts of this case. The facial validity of a statute is determined without regard to facts of a particular case. The majority is able to dismiss the notion of possession of contraband as surplusage only upon the results of an evidentiary hearing.
The second problem presented by the majority is its belief that an allegation of receiving contraband coupled with an allegation of possession allows the court to ignore the charge of possession. This result is reached in part by the majority looking beyond the charging document to the specific facts of this case. We are confronted with a poorly drafted statute and a more poorly drafted charging document. The statute sets forth several distinct offenses coupled in the alternative with "or". Among those offenses are possession of contraband and receiving contraband. The statute further purports to include written communications within its definition of contraband.
The charging document, in a single count, clearly alleges that the appellant *1245 received written communications and possessed written communications. The court cannot ignore, as surplusage, the plain language of the charging document. I would affirm the trial judge on his ruling with respect to the facial invalidity of the statute.
NOTES
[1] This occurred while Olson was interviewing another prisoner and Madry approached her with complaints about the allegedly substandard health care and the abusive treatment at the jail. Because she had no writing materials, Ms. Olson asked him to write down all his complaints for her future consideration.
[2] See infra note 5.
[3] The statute as a whole provides:

951.22 County detention facilities; contraband articles. 
(1) It is unlawful, except through regular channels as duly authorized by the sheriff or officer in charge, to introduce into or possess upon the grounds of any county detention facility as defined in s. 951.23 or to give to or receive from any inmate of any such facility wherever said inmate is located at the time or to take or to attempt to take or send therefrom any of the following articles which are hereby declared to be contraband for the purposes of this act, to wit: Any written or recorded communication; any currency or coin; any article of food or clothing; any intoxicating beverage or beverage which causes or may cause an intoxicating effect; any narcotic, hypnotic, or excitative drug or drug of any kind or nature, including nasal inhalators, sleeping pills, barbiturates, and controlled substances as defined in s. 893.02(4); any firearm or any instrumentality customarily used or which is intended to be used as a dangerous weapon; and any instrumentality of any nature that may be or is intended to be used as an aid in effecting or attempting to effect an escape from a county facility.
(2) Whoever violates subsection (1) shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083 or s. 775.084.
[4] In this regard the court stated as follows:

The defendant has standing to challenge the constitutionality of this statute on vagueness or overbreadth grounds. Carricarte v. State, 384 So.2d 1261 (Fla. 1980), [cert. denied, 449 U.S. 874, 101 S.Ct. 215, 66 L.Ed.2d 95 (1980)]; Tribune Company v. Huffstetler, 489 So.2d 722 (Fla. 1986).
Statutes are presumed valid when properly enacted. Courts must vigorously apply this presumption when the constitutional validity of a statute is questioned. However, a statute must be reasonably definite and certain in its meaning. A statute is vague if persons of common intelligence must necessarily guess at its meaning. Linville v. State, 359 So.2d 450 (Fla. 1978); Cline v. Frink Dairy Co., 274 U.S. 445, [47 S.Ct. 681, 71 L.Ed. 1146] (1927). In construing a criminal statute on a claim of vagueness, any doubt should be resolved in favor of the citizen and against the State. State v. Wershow, 343 So.2d 605 (Fla. 1977). Moreover, when a statute impacts upon or impedes First Amendment freedoms it must be scrutinized carefully to insure that constitutional rights are not unduly implicated by virtue of its overbreadth or vagueness.
On its face, the statute in question would prevent the mere possession of a newspaper, driver's license, legal pleading, or other written document by anyone at the jail, including an attorney visiting a client, a physician treating a sick inmate or a judge conducting first appearance hearings. While the State unquestionably has a vital interest in the security of county detention facilities, that interest, when balanced against the prohibition of conduct protected by the First Amendment, is not so great that the mere possession of harmless written communications can be the basis of a criminal violation. The State in enacting an overbroad statute which outlaws all written communications has made wholly innocent conduct the subject of criminal prosecution. This statute as promulgated does not contain language sufficiently and reasonably definite to fairly apprise the citizens of the State of Florida as to what conduct is or is not prohibited. Since a citizen of reasonable intelligence "must necessarily guess" as to which conduct is prohibited and which is permissible, this statute is unconstitutionally vague and violative of due process requirements of Article I, Section 9 of the Florida Constitution and the Fourteenth Amendment to the United States Constitution.
In considering the merits of Defendant's companion, overbreadth claim, this Court has carefully studied the Circuit Court's order in State of Florida vs. Hardee, Case No. 85-139 (Fla. 3rd Circ. Ct. March 18, 1986) and the District Court's subsequent opinion in State v. Hardee, 504 So.2d 33 (Fla. 1st DCA 1987). Hardee involved the same penal statute and clearly more egregious conduct.
* * * * * *
Finally, Olson contends, in the alternative, that this statute was unconstitutionally applied to her in this case. She argues that there were no written procedures established at the Leon County Jail by which a news media representative could receive or possess permissible "written communications." She further contends that the Leon County Jail was not in compliance with DOC Rules 33-8.009(5)(a) and 33-8.013(1) and (2) which require the posting of "rules and regulations" governing the conduct of visitation and of inmates and visitors.
It is undisputed that the Leon County Jail had posted rules applying to the visitation of inmates. It is also undisputed that the Leon County Jail had no posted regulation governing the receipt or possession of "written communications" by a visitor to the Jail; and that the posted rules had not been updated since the promulgation of the DOC rules previously mentioned. However, it is unclear indeed that the mere posting of more detailed regulations at the Jail would have bootstrapped the statute in question to a viable vehicle for prosecution given its vagueness and overbreadth.
Thus, while the statute may be said to have been unconstitutionally applied in this case, such a finding necessarily and almost totally is grounded upon the finding that the statute is unconstitutional on its face. That is, even if the Leon County Sheriff's Department had posted a 10' X 14' sign containing a verbatim recitation of this statute, neither Ms. Olson nor any other visitor to the Jail could have been constitutionally prosecuted for its violation. This statute is unconstitutionally overbroad. Accordingly, it is
ORDERED AND ADJUDGED that the Defendant, Karen E. Olson's Motion to Dismiss the Information is granted on the basis that Florida Statute § 951.22 is unconstitutionally vague and overbroad on its face, and as applied to the facts of this case.
[5] Since the facts show that Ms. Olson actually "received" the communication from the prisoner, contrary to the quoted portion of the statute, it is unnecessary to consider any separate issue which would arise out of her mere possession of that paper. Accordingly, we disregard the allegation in the information which states that she also "possess[ed]" the note as mere surplusage. See Thomas v. State, 183 So.2d 297 (Fla. 3d DCA 1966); Nelson v. State, 157 So.2d 96 (Fla. 3d DCA 1963), cert. denied, 165 So.2d 178 (Fla. 1964). Under this analysis, we do not consider the propriety of a prosecution for any of the numerous fact patterns which might arise under other alternative additional portions of the statute, including some of the horribles, as paraded by the appellee, which seem to have frightened the trial judge. We may say, however, that ordinary rules of construction which require that a statute be read so as to avoid unconstitutional results, Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); White v. State, 330 So.2d 3 (Fla. 1976); Deehl v. Knox, 414 So.2d 1089 (Fla. 3d DCA 1982); see 49 Fla.Jur.2d Statutes § 98 (1984), and absurd ones, State v. Webb, 398 So.2d 820 (Fla. 1981), would preclude any determination that it would be a felony for a visitor to carry a personal letter or a five dollar bill in his pocket or, indeed, to wear clothing while at a jail. See State v. Hardee, 504 So.2d 33 (Fla. 1st DCA 1987) (holding statute "unconstitutionally vague" as applied to mere possession of money on jail premises). A reasonable construction of this Hydra-headed statute would clearly render mere possession criminal only as to otherwise noninnocent objects, such as drugs or firearms, and involve commonplace materials, such as letters, or money, only when they are, as here, unauthorizedly passed to or from a prisoner.
[6] We have already determined that there is nothing wrong with delegating this authority to the officer in charge. See Hardee, 504 So.2d at 34.