PER CURIAM.
The state appeals two orders granting motions to dismiss an information charging violation of section 944.47(l)(a)l and 5, Florida Statutes. We conclude that the trial court erred in granting the motions to dismiss. We accordingly reverse and remand for further proceedings.
Fleming was employed as a cook at a state correctional institution. The arrest report states that a confidential infor *1230 mant/inmate advised officers that Fleming was changing unauthorized amounts and denominations of cash for inmates. The inmate was given a twenty dollar bill, after the serial number was recorded. The inmate later informed officers that Fleming had accepted the twenty dollar bill for the purpose of changing it into legal denominations. Fleming was detained as he was departing from the facility that evening. A struggle ensued between Fleming and the officers. After Fleming was subdued, the twenty dollar bill was recovered and a box cutter was discovered.
Fleming was charged by information. Count I charged Fleming with removing contraband from a state correction institution, to-wit, currency transmitted to an inmate of the institution, in violation of section 944.47, Florida Statutes (1989). Count II charged Fleming with introducing contraband into a state correctional institution, to-wit, a weapon (box cutter), contrary to section 944.47. Fleming was also charged with violation of section 812.014(2)(d), Florida Statutes (1989), based on his possession of cheese from the institution at the time he was detained outside the facility.
Section 944.47(1), Florida Statutes (1989), provides in relevant part:
(l)(a) Except through regular channels as authorized by the officer in charge of the correctional institution, it is unlawful to introduce into or upon the grounds of any state correctional institution, or to take or attempt to take or send or attempt to send therefrom, any of the following articles which are hereby declared to be contraband for the purposes of this section, to wit:
1. Any written or recorded communication or any currency or coin given or transmitted, or intended to be given or transmitted, to any inmate of any state correctional institution.
[[Image here]]
5. Any firearm or weapon of any kind or any explosive substance.
[[Image here]]
(c) It is unlawful for any inmate of any state correctional institution or any person while upon the grounds of any state correctional institution to be in actual or constructive possession of any article or thing declared by this section to be contraband, except as authorized by the officer in charge of such correctional institution.
Fleming filed a motion to dismiss counts I and II, arguing that subsections 944.-47(l)(a)l and 5 are unconstitutionally vague and overbroad. Fleming filed a separate motion to dismiss count II, arguing that a box cutter is not a weapon within the meaning of the statute. Fleming also moved to dismiss count III of the information, arguing that once counts I and II are dismissed, only a petty theft charge would remain. He contended that the slices of cheese did not meet the jurisdictional amount for felony theft and the trial court would lack jurisdiction.
The trial court initially granted the motion to dismiss count I on the ground that the statute is unconstitutional on its face. The trial court’s order provides:
Very little imagination is required to provide examples of innocent conduct that could be made unlawful by this statute. For example, a lawyer visiting a client in a state institution could be arrested for no more than possession of a legal pad, provided the pad contains some written material. And, a correctional officer could be arrested simply because he has currency in his pocket, provided someone believes the officer “intends” to give the currency to an inmate.
The trial court declined to dismiss count II because the statute was constitutionally valid on its face and because there was no evidentiary basis to find it unconstitutional as applied.
Fleming then filed an amended motion to dismiss count II, in which he asserted that he had left the box cutter in his pocket upon leaving his second job at a grocery store. He asserted that he did not brand *1231 ish the box cutter or use it in a threatening manner, but that it remained in his pocket at all times. After a hearing, the trial court dismissed count II. The trial court stated there was no evidence, direct or circumstantial, which could lead a jury to infer that the box cutter was intended to be used as a weapon.
The state first seeks reversal of the order dismissing count I on the ground that section 944.47(l)(a)l is unconstitutionally vague. The state argues that the statute clearly describes the conduct and contraband prohibited and that no person of common intelligence needs to guess what acts are prohibited. Our decision regarding this issue is controlled by the decision in State v. Olson, 586 So.2d 1239 (Fla. 1st DCA 1991).
In Olson, an inmate passed some pieces of paper with writing on them to a reporter. The reporter refused to surrender the papers and was later arrested and charged with violation of section 951.22, Florida Statutes.[1] The trial court found the statute to be unconstitutionally vague, stating: “On its face, the statute in question would prevent the mere possession of a newspaper, driver’s license, legal pleading, or other written document by anyone at the jail, including an attorney visiting a client, a physician treating a sick inmate or a judge conducting first appearance hearings.... The State in enacting an overbroad statute which outlaws all written communications has made wholly innocent conduct the subject of criminal prosecution. This statute as promulgated does not contain language sufficiently and reasonably definite to fairly apprise the citizens of the State of Florida as to what conduct is or is not prohibited.” Id., at 1241, 1242 n. 4 (emphasis in original).
The judgment was reversed on appeal. The majority rejected the argument that the statute was unconstitutionally vague:
We frankly find nothing at all in the appellee’s contention that there is anything vague about the portion of 951.22 she allegedly violated. Certainly, no person “of common intelligence” needs to guess at the fact that, when the statute says that one may not receive any “written communication” “from any inmate” “except through regular channels as duly authorized by the sheriff,” it means just that and that the conduct which forms the basis of this case is unambiguously described by that provision.
(Footnote omitted; citation omitted). The majority noted:
[W]e do not consider the propriety of a prosecution for any of the numerous fact patterns which might arise under other alternative additional portions of the statute, including some of the horribles, as paraded by the appellee, which seem to have frightened the trial judge. We may say, however, that ordinary rules of construction which require that a statute be read so as to avoid unconstitutional results, and absurd ones, would preclude any determination that it would be a felony for a visitor to carry a personal letter or a five dollar bill in his pocket or, indeed, to wear clothing while at a jail. See State v. Hardee, 504 So.2d 33 (Fla. 1st DCA 1987) (holding statute “unconstitutionally vague” as applied to mere possession of money on jail premises). A reasonable construction of this Hydra-headed statute would clearly render mere possession criminal only as to otherwise noninnocent objects, such as drugs or firearms, and involve common *1232 place materials, such as letters, or money, only when they are, as here, unautho-rizedly passed to or from a prisoner.
Id. at 1243 n. 5 (citations omitted).
The state also seeks reversal of the order dismissing count II of the information, which charged Fleming with introducing a weapon into a state correctional institution in violation of section 944.47(l)(a)5. The term “weapon” is not defined in chapter 944, Florida Statutes. Consistent with decisions defining the term “weapon” in the context of other criminal statutes, we conclude that for purposes of section 944.-47(l)(a)5, an instrument is a weapon if it is designed and constructed for use as a weapon, or if the instrument is capable of being used as a weapon, the defendant used, threatened to use, or intended to use it as such. Cf. P.C. v. State, 589 So.2d 438 (Fla. 3d DCA 1991) (adjudication of delinquency in connection with charge of carrying a concealed weapon in violation of section 790.001(3)(a), Florida Statutes, reversed; no evidence in record to even suggest that the letter opener in question fit the definition of being a “deadly” weapon or that the juvenile intended to use the instrument as a deadly weapon); Robinson v. State, 547 So.2d 321 (Fla. 5th DCA 1989) (a “deadly weapon” under section 790.-001(3)(a), Florida Statutes, can be any instrument which will likely cause death or great bodily harm when used in the ordinary and usual manner contemplated by its design and construction; an object can also be construed to be a deadly weapon because of its use or threatened use during the alleged crime).
Fleming’s amended motion to dismiss [2] asserted that he was employed at a grocery store where he regularly used the box cutter to open boxes, that the box cutter was in his pocket that day because he had left it there upon leaving work at the grocery store, and that he did not brandish the box cutter or use it in a threatening manner while in the institution. The issue is not solely whether Fleming brandished the box cutter in a threatening manner, however, but whether the box cutter in his possession was intended to be used as a weapon. That intent is not absolutely dispelled by the assertion in the motion that the box cutter was in his pocket “because he had left it there upon leaving work at the IGA.”
It is a jury question whether the box cutter remained in Fleming’s pocket after work and upon entry to the correctional institution for the purpose of protecting himself while engaged in the alleged money changing transactions with inmates. Even if Fleming had asserted he had no intent to use the box cutter as a weapon, the circumstances would not preclude the state from belying this assertion based on Fleming’s alleged activity of changing denominations of money for inmates and the fact that the box cutter was recovered from the ground after a struggle with officers. Intent, being a state of mind, can be inferred from the acts of the defendant and the surrounding circumstances. The issue of the existence of such an undisclosed mental intent cannot be disposed of in a rule 3.190(c)(4) motion. See, e.g., State v. Booker, 529 So.2d 1239 (Fla. 1st DCA 1988).
The trial court erred in dismissing counts I and II of the information. The appealed orders are reversed and the cause is remanded for further proceedings.
BARFIELD and ALLEN, JJ., concur.
KAHN, J., concurs with written opinion,

. Section 951.22, Florida Statutes, is similar to the statute at issue with the exception that it applies to county detention facilities rather than state correctional institutions. Section 951.22 provides, in relevant part:
(1) It is unlawful, except through regular channels as duly authorized by the sheriff or officer in charge, to introduce into or possess upon the grounds of any county detention facility as defined in s. 951.23 or to give to or receive from any inmate of any such facility ... or to take or to attempt to take or send therefrom any of the following articles which are hereby declared to be contraband for the purposes of this act, to wit: Any written or recorded communication; any currency or coin....

. The parties and the trial court treated the motion as a motion to dismiss pursuant to Rule 3.190(c)(4), Florida Rules of Criminal Procedure. The state’s response was treated as a traverse.